1
2
3
4
5
6            IN THE UNITED STATES DISTRICT COURT
7
8            FOR THE NORTHERN DISTRICT OF CALIFORNIA
9

10   C.S., a minor, by and through his parents          No. C 06-02166 WHA
11   N.S. and M.S.,

12            Plaintiffs,

13      v.                                              **ORDER GRANTING
                                                        DEFENDANTS' MOTIONS
14   STATE OF CALIFORNIA DEPARTMENT                     TO DISMISS**
     OF EDUCATION, in its supervisory capacity,
15   the CALIFORNIA OFFICE OF
     ADMINISTRATIVE HEARINGS,
16
              Defendants.
17   ─────────────────────────────────/

18                        **INTRODUCTION**

19         In this declaratory relief action under the Individuals with Disabilities Education

20   Improvement Act ("IDEIA") and state law, the parents and guardians ad litem of a disabled

21   minor allege their son has been denied a free appropriate public education because of

22   defendants' failure to issue a timely decision in a special-education administrative proceeding.

23   This order dismisses the action, for the reasons set forth below.

24                         **STATEMENT**

25         Plaintiff C.S. is a sixteen year-old student in the Contra Costa Country School District

26   (Second Amd. Compl. ¶ 1).  In or around 1996, C.S. was diagnosed with Autistic Spectrum

27   Disorder.  This disorder substantially limited his participation in major life activities, including

28   learning and caring for himself  (Administrative Record Exh. A at 5).  In addition, C.S.'s

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

1   disability entitled him to receive special education and related services through the age of 22

2   under the IDEIA, 20 U.S.C. 1400 et seq. (Second Amd. Compl. ¶ 1).

3           Between approximately February 4, 2005, and April 13, 2005, plaintiff was transitioning

4   to a program for high school opened by the San Ramon Valley Unified School District

5   ("SRVUSD").[1]   During this time, C.S.'s parents made numerous requests to SRVUSD for an

6   individualized education program meeting date.  In response to his parents' assertions that C.S.

7   should never be left alone and recommendations that C.S. have a full-time one-on-one day aide

8   for safety reasons, SRVUSD offered the use of a classroom aide to escort C.S. to his classes.

9   Furthermore, on or around June 28, 2005, SRVUSD agreed to pay for applied behavior-analysis

10  services through part of the extended school year and until the high school program commenced

11  on August 29, 2006.  C.S. was also set to attend and did attend Monte Vista High School, which

12  is governed by SRVUSD, for his first academic year of high school (Compl. ¶¶ 95, 100).

13          On September 22, 2005, however, C.S. was suspended from Monte Vista High School

14  for five days for grabbing, scratching, kicking, and attempting to choke staff (AR Exh. A at 13).

15  C.S. did not receive a pre-suspension conference, which would have allowed plaintiffs to be

16  informed of the disciplinary reasons for the action, hear the evidence against C.S., and would

17  have given him the opportunity to present his version of the incident (Prop. Second Amd.

18  Compl. ¶ 114).  After September 29, 2005, C.S.'s parents requested home services.  SRVUSD

19  agreed to provide interim home placement but also proposed a change of placement for C.S. to

20  Liberty High School, a public school for severely handicapped children also governed by the

21  SRVUSD.  On or about September 30, 2005, C.S.'s parents observed Liberty High School but

22  determined that the placement would be unacceptable and inappropriate for C.S's individual

23  needs (Prop. Second Amd. Compl. ¶¶ 120–24).

24          On November 2, 2005, C.S.'s mother observed the educational program at A Better

25  Chance School.  A Better Chance School is a private school that provides individualized

26

27          [1] SRVUSD is a school district within California and is the entity responsible for the provision and
    supervision of special-education services for C.S., pursuant to the IDEIA.  The Contra Costa County Office of

28  Education ("CCCOE"), on the other hand, provides special education services for and on behalf of students
    enrolled in schools governed by school districts within Contra Costa County.

United States District Court

For the Northern District of California

1  functional academic environments for students using a multi-disciplinary approach.  The next

2  day, C.S.'s mother received an offer to admit C.S. to A Better Chance School effective July 6,

3  2005.  Despite this offer of admission, plaintiffs filed their administrative complaint the

4  following day (AR Exh. C at 1223, Exh. D).

5  On November 4, 2005, as a result of a disagreement between plaintiffs and SRVUSD

6  over placement and services regarding Liberty High School, plaintiffs filed a request for a due

7  process hearing with the Office of Administrative Hearings ("OAH").  The due process

8  complaint named SRVUSD, Contra Costa County Office of Education (CCCOE), and Contra

9  Costa County Special Education Local Plan Area (SELPA) as respondents (AR Exh. J at 1).  On

10  or about November 8, 2005, plaintiffs filed a motion to determine stay-put placement with

11  OAH.  Plaintiffs requested home services and placement for C.S.[2]  SRVUSD filed a response to

12  plaintiffs' due process complaint and also filed a notice of insufficiency with OAH.  OAH

13  granted SRVUSD's notice of insufficiency request, stating that because plaintiffs' due process

14  complaint was extensive, plaintiffs should state further proposed resolutions than those

15  plaintiffs reported as being within their knowledge at the time.  Specifically, OAH stated that

16  plaintiffs' administrative complaint was insufficient with regard to two of their proposed

17  resolutions.  First, the ALJ found that plaintiffs did not adequately explain the home program

18  they requested for C.S. and the nexus between (1) the requested program and (2) C.S.'s

19  education and behavioral needs.  In addition, the ALJ held that plaintiffs had not alleged why

20  C.S. required the services of a non-public school (AR 11-22-05 Order at 4).  The ALJ, however,

21  permitted the plaintiffs to file an amended due process complaint to cure these deficiencies.

22  Plaintiffs then filed a motion for reconsideration, which OAH denied (Second Amd. Compl.

23  ¶¶ 15–22).

24  On or about December 6, 2005, plaintiffs filed their amended due process complaint and

25  amended request for stay-put placement.  When SRVUSD and CCCOE filed responses to

26  plaintiffs' amended complaint, plaintiffs filed a motion to strike, asserting that the responses, as

27

28  [2] The IDEIA's stay-put provision directs that a disabled child shall remain in his or her then current educational placement pending completion of any proceedings to review decisions concerning the child's education.  20 U.S.C. 1415(e)(3).

1    filed, did not comply with the IDEIA.  OAH denied plaintiffs' motion, stating that it did not

2    possess the authority or jurisdiction to hear motions to strike improper filings by local

3    educational agencies.  On or around January 17, 2006, meditation took place between plaintiffs

4    and SRVUSD, CCCOE, and SELPA.  OAH subsequently scheduled a due process hearing for

5    February 1, 2006 (Second Amd. Compl. ¶ 23–27).

6            On March 28, 2006, plaintiffs filed herein an *ex parte* application for a temporary

7    restraining order, seeking to enjoin OAH from proceeding with the due process hearings for ten

8    days.  Plaintiffs filed the temporary restraining order in an attempt to prevent the ALJ from

9    going forward with the administrative hearing based on its after-the-fact realization that OAH

10   had caused an allegedly unfair delay in proceedings up to that point.  The matter was addressed

11   by the Court in a hearing held on March 30, 2006.  Plaintiffs' request was denied after the Court

12   discovered that plaintiffs had failed to serve defendants with relevant transcripts.  In so holding,

13   the undersigned found plaintiffs' *ex parte* attempt had been "unfair" (Tr. Mar. 30, 2006 at 15).

14   Basically, plaintiffs had sat on their rights and then at the last minute demanded a federal

15   temporary restraining order without giving defendants an adequate opportunity to be heard.

16   That tactic was denied.

17           At OAH's request, plaintiffs submitted several dates of availability for the postponed

18   schedule.  OAH set plaintiffs' due process hearing to begin on April 3, 2006.  Subsequently, the

19   due process hearing commenced as scheduled and concluded on April 21, 2006.  OAH issued

20   its final decision on June 1, 2006.

21           OAH's administrative decision rejected plaintiffs' claims that C.S. was denied a free

22   appropriate education for the school years 2002 through 2004.  Alternatively, the ALJ

23   determined that C.S. was denied a free appropriate education in the school year of 2005 through

24   2006 because the transitional institutionalized education program plan into Liberty was

25   inadequate.  In addition, the ALJ found that C.S. had been denied services, such as a one-on-one

26   aide, applied behavior-analysis services, and mainstreaming opportunities (AR Exh. A at 26).

27   Following, the ALJ's decision, plaintiffs entered into a "Compromise and Settlement

28   Agreement" with SRVUSD, CCCOE, and SELPA.  Shortly thereafter, plaintiffs dismissed their

1    claim against the district and amended their complaint against OAH and the California

2    Department of Education ("Department").

3           In their second amended complaint, plaintiffs claim that C.S. was denied a free

4    appropriate education from the school years of 2002–2006.  In particular, plaintiffs assert that

5    OAH's excessive delay in scheduling plaintiffs' due process hearing has exceeded the time-

6    frame set forth in 34 C.F.R. 300.511 and California Education Code Section 56502(f) (Compl.

7    ¶ 51).  Since October 17, 2005, C.S. received home-based education services and was

8    educationally placed at home at the expense of his parents.  Consequently, plaintiffs allege that

9    C.S. has been denied a free appropriate education in the least-restrictive environment and is thus

10   entitled to compensatory educational services from OAH.  Plaintiffs also contend that the

11   Department, as the supervisor of OAH, is jointly liable for OAH's violations for failing to

12   adequately ensure OAH's compliance with state and federal laws, pursuant to 20 U.S.C. 1412.

13   Finally, plaintiffs bring claims under Section 504 of the Rehabilitation Act of 1973 and Title II

14   of the ADA.  Defendants now move to dismiss plaintiffs' claims.

15                                          **ANALYSIS**

16          As a condition of federal financial assistance, the IDEIA requires state education

17   agencies to comply with its provisions in administering a free appropriate education to children

18   with disabilities in their jurisdictions.  20 U.S.C. 1400.  In aid of this goal, IDEIA guarantees

19   procedural safeguards, such as the process of developing individualized education programs for

20   each student.  20 U.S.C. 1415(a).  In compliance with the IDEIA, the California Education

21   Code includes procedural safeguards to guarantee that "all individuals with exceptional needs

22   are provided their rights to appropriate programs and services which are designed to meet their

23   unique needs" under the IDEIA.  CAL. EDUC. CODE 56000.  If parties have grievances, they may

24   issue complaints and request an administrative due process hearing before an independent and

25   impartial hearing officer.  20 U.S.C. 1415(f); 34 C.F.R. 300.506, 300.507 and 300.508 et seq.

26   Under these statutes and regulations, a party aggrieved by the final administrative decision may

27   seek review in a district court.  20 U.S.C. 1415(i)(2)(A).  A district court is required to conduct

28

**United States District Court**
For the Northern District of California

1    a qualified *de novo* review of the evidence and "must give due weight to judgments of

2    education policy." *Ojai Unified Sch. Dist. v. Jackson*, 4 F.3d 1467, 1471–72 (9th Cir. 1993).

3            Judicial review under the IDEIA is ordinarily available only after the complaining party

4    has exhausted administrative remedies.  20 U.S.C. 1415(e)(2).  Plaintiffs and defendants are in

5    dispute over whether plaintiffs have exhausted their administrative remedies as required by the

6    IDEIA.  Although both sides state that this is the dispositive issue, it is not so.  Plaintiffs have

7    already sought review of their claims in an OAH administrative proceeding and have received a

8    final ruling on their claims.  Thus, the controlling issue in this case is not whether plaintiffs may

9    seek remedies outside the purview of administrative proceedings but whether plaintiffs can

10   obtain monetary damages for defendants' alleged violation of due process, flowing from an

11   alleged delay of their administrative proceedings.

12           **1.    STANDARD OF REVIEW**.

13           Defendants bring their motions to dismiss under Rules 12(b)(1) and 12(b)(6).  Defendant

14   OAH, however, requested that the Court take judicial notice of the OAH administrative record

15   pertaining to plaintiffs' due process claim.  A federal court must convert a Rule 12(b)(6) motion

16   to one for summary judgment when the parties submit, and the court does not reject, material

17   beyond the pleadings.  *Cunningham v. Rothery (In re Rothery)*, 143 F.3d 546 (9th Cir. 1998).  A

18   party who submits matters outside the pleadings to the court and invites consideration of them

19   has notice that the court may use them to construe a motion to dismiss as a motion for summary

20   judgment.  *Grove v. Mead Sch. Dist. No. 354*, 753 F.2d 1528, 1533 (9th Cir. 1985).  Entry of

21   summary judgment is proper only where the pleadings, the admissions on file, and the

22   affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

23   party is entitled to judgment as a matter of law.  FED. R. CIV. P. 56(c).

24           **2.    COMPROMISE AND SETTLEMENT AGREEMENT.**

25           The gravamen of plaintiffs' complaint is that OAH's 123-day delay in issuing a decision

26   caused injury to plaintiffs by denying C.S. a free appropriate education (Opp. (OAH) 10).  On

27   or about July 11, 2006, however, plaintiffs entered into a "Compromise and Release

28   Agreement" with SRVUSD, CCCOE, and SELPA, which resolves all disputes, claims and

United States District Court

For the Northern District of California

1    causes of action concerning C.S.'s education program and services for the past, present and

2    future.  In addition, the settlement agreement required that C.S.'s parents "dismiss Federal Case

3    No. C06-2166 WHA with prejudice, within 5 days of full execution of this agreement" and

4    "waive their right to file appeal of the hearing decision" (Settlement Agmt. ¶ 2. M–P).

5    Defendants OAH and the Department were both originally named as defendants in plaintiffs'

6    verified complaint filed on March 24, 2006.  Accordingly, plaintiffs should have dismissed their

7    complaint in its entirety by July 16, 2006.  Instead, plaintiffs attempted to circumvent this

8    provision of the agreement by filing a second amended complaint on July 28, 2006, naming

9    only OAH and the Department as defendants.  By continuing to pursue their claims in this

10    action, plaintiffs contravene the terms of the settlement agreement they are bound to uphold.

11            Plaintiffs contend that because OAH was not a party to the settlement, it therefore

12    cannot claim that the settlement's provisions apply to OAH (Opp. (OAH) 20).  This argument is

13    without merit based on the fact that the settlement agreement incorporated a broad release of all

14    plaintiffs' claims.  Paragraph 3 of the Compromise and Settlement Agreement includes a

15    detailed general release:

> Parents and Respondents, and any predecessors and successors in
> interest, heirs, and assigns, officers, directors, agents, employees,
> partners, and trustees, hereby fully release and discharge each
> other and their predecessors and successors in interest, heirs, and
> assigns, officers, directors, all members of the governing board,
> both former and present, agents, employees, partners and trustees,
> of any and all known and unknown claims past, present, or future
> related to [C.S.]'s education . . . .  This general release and
> settlement includes, but is not limited to, any and all known and
> unknown claims related to the identification, evaluation,
> educational placement, related services, and provision of a free
> appropriate public education for [C.S.] by the Respondents,
> including, but not limited to, reimbursement and compensatory
> education, through the date [C.S.] is no longer eligible to receive
> special education services.

24    This order holds that this broadly stated release was meant to include defendants, as defendants

25    were only liable to the extent SRVUSD, CCCOE, and SELPA were liable.  Although C.S.

26    continues to be entitled to a free appropriate education under defendants' jurisdiction, the terms

27    of the Compromise and Settlement Agreement limit the school district's liability.

28

1    Consequently, plaintiffs are barred from seeking relief from defendants for their claims

2    involving their past denials of a free appropriate education.  This case is over.

3    **3.    PLAINTIFFS' CLAIM FOR MONETARY DAMAGES**.

4         Although the foregoing is dispositive, it is worth pausing over the audacity of what

5    plaintiffs are demanding.  They want damages from a state administrative agency for taking too

6    long to adjudicate their grievance.  This is like suing a judge for making an erroneous ruling.

7    Plaintiffs had adequate remedies by way of judicial review and/or mandamus.  They cannot

8    collect damages from defendants.

9         General monetary damages are ordinarily unavailable under the IDEIA.  *Witte v. Clark*

10   *County Sch. Dist.*, 197 F.3d 1271, 1275 (9th Cir. 1999).   Nonetheless, the Supreme Court in

11   *School Committee of Burlington, Massachusetts v. Department of Education of Massachusetts*,

12   471 U.S. 359 (1985), held that the IDEIA authorizes compensatory reimbursement from school

13   authorities to parents of disabled children for their expenditures on special education if the court

14   determines such placement is appropriate.  *Id.* at 394–95.  Plaintiffs, however, do not provide

15   any authority on point addressing the issue of whether they can seek money damages based on

16   defendants' delay in rendering a decision (Reply Br. 8).  Plaintiffs rely on the district court case

17   of *Blackman v. District of Columbia*, 277 F. Supp. 2d 71, 79 (D.D.C. 2003), in support of their

18   argument that administrative bodies responsible for holding due process hearings should be held

19   accountable for their failure to perform their duties (Opp. (OAH) 13).  *Blackman*, however,

20   does not directly speak to the issue of whether a plaintiff can sue a court or adjudicative body

21   for damages based on a delay in rendering a decision.

22        Nothing in *Blackman* nor any other Ninth Circuit case stands for the proposition that a

23   plaintiff can sue a court or administrative body for damages based on a delay in rendering a

24   decision.  Furthermore, plaintiffs do not cite to any other authority providing guidance on this

25   issue.  This Court will not "make law" creating a claim for damages against an agency for

26   allegedly taking too long to decide or for even deciding incorrectly.  It is a bad idea.  It is bad

27   policy.  It is completely unsupported by the law.

28

United States District Court

For the Northern District of California

**United States District Court**
For the Northern District of California

1   **4.      REHABILITATION ACT AND TITLE II OF THE ADA.**

2       The IDEIA is a comprehensive statutory and regulatory scheme that provides for

3   students to be given a free appropriate education by the state agency.  Students denied a fair

4   appropriate education can also bring claims based on Section 504 of the Rehabilitation Act or

5   Title II of the Americans with Disabilities Act ("ADA").  20 U.S.C. 1415(i)(3)(B).  As stated

6   above, plaintiffs have waived their past, present, and future claims regarding the denial of C.S.'s

7   free appropriate education.  Because plaintiffs' IDEIA cause of action fails, plaintiffs' claims

8   under Section 504 and the ADA are also defeated.

9                                **CONCLUSION**

10      To the extent this order does not address any remaining claims or arguments asserted by

11  plaintiffs in their complaint or at the hearing, they are either without merit or improperly raised.

12  For the foregoing reasons, defendants' motions to dismiss, construed as motions for summary

13  judgment, are **GRANTED**.

14

15      **IT IS SO ORDERED.**

16                                              _____

17  Dated: November 16, 2006                     WILLIAM ALSUP
                                                 UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28